

**U.S. DEPARTMENT OF JUSTICE**

_____

*David W. Tyler*  601 D Street N.W.
*david.w.tyler2@usdoj.gov*  Room 9930
*(202) 305-3988*  Washington, DC 20004

Hon. Leda Dunn Wettre, U.S.M.J.   September 7, 2017
United States District Court
District of New Jersey
Martin Luther King Courthouse
50 Walnut Street
Newark, NJ 07101

      RE:   *United States v. The Halpern Group*, No. 17-cv-3065

Dear Judge Wettre:

      This letter addresses Halpern's August 31 letter to the Court [Dkt. 22]. Halpern requested an extension of time to file that letter so that it could gather "additional information from [its] client" to "inform [the Court] of the scope of the confidentiality issues presented by the DOJ Subpoena," [Dkt. 18] at 1, but it fails to address that subject beyond a general recitation of the number of states in which confidentiality orders were issued. Instead, Halpern reasserts yet again, without any basis in fact or law, that it is entitled to redact or withhold certain documents that are "beyond the agreed upon scope of the subpoena" and "protected by Court orders and/or confidentiality provisions in Settlement Agreements." [Dkt. 22] at 3-4. In addition, Halpern reasserts its old arguments relating to duplicative and burdensome productions.

      As Halpern provides no answer to DOJ's Supremacy Clause arguments, despite the Court's clear direction that it "[c]arefully consider the Government's position," [Dkt. 20], this letter discusses only the remaining arguments that Halpern raises to avoid its compliance obligations.

**I.   Halpern's Argument that DOJ "Agreed" to Limit Halpern's Productions to Missouri Cases is Incorrect and Irrelevant.**

      <u>First</u>, as previously noted, Halpern's argument that DOJ agreed to limit its collection of documents to certain Missouri trusts is just plain wrong. Contrary to Halpern's representations, DOJ's August 12, 2016 email only limited Halpern's productions from "all emails" to "emails discussing disbursements from trusts" and sought to prioritize certain responsive productions following a telephone conference between the parties. *Compare* [Dkt. 1-3], *with* [Dkt. 1-4] ("Per our conversation, we will work with you to narrow requests #3 and #4 in Attachment C. *For the time being, we will narrow these requests to apply to emails discussing disbursements from trusts*, with a particular emphasis on the trusts arising from the lead cases in or around [the] Herculaneum, Missouri area.") (emphasis added); *see also* [Dkt. 17] at 2-3. Halpern should not be permitted to

misconstrue this narrowing of the Subpoena—which DOJ offered "[f]or the time being," as an unrequited attempt to facilitate Halpern's cooperation—as some sort of binding, bilateral agreement that permitted Halpern to forever withhold responsive information. [Dkt. 22] at 2-3. Not only does the August 12 email fail to support such a reading, but DOJ flatly rejected Halpern's proposal, in a telephone conference in late 2016, to redact potentially responsive information from trusts formed outside of Missouri. Even if Halpern initially misinterpreted the scope of DOJ's investigation, DOJ has clarified its position for Halpern on numerous prior occasions—both in phone conversations before filing suit and in multiple briefings to this Court. *See, e.g.*, [Dkt. 17] at 2-3. Halpern's continued repetition of a position that it knows to be false is simply the latest episode in an already troubling pattern of creating facts and shifting goalposts, in which Halpern has engaged since the Subpoena was first served.[1]

Second, setting aside Halpern's inaccurate factual characterizations, the only issue before this Court—and the only issue that this Court has jurisdiction to adjudicate—is the lawfulness of the Subpoena. After skirting its Subpoena obligations for months, Halpern should not be rewarded for its gamesmanship by an order that redrafts the Subpoena's language as Halpern suggests. This would only encourage future subpoena respondents to willfully dodge their compliance obligations in the hope of getting a better deal from a federal court after DOJ moves to compel. Halpern could and should have negotiated the terms of its compliance with the Subpoena long before it forced DOJ to file a lawsuit to get documents that DOJ was legally entitled to receive all along. *See* [Dkt. 8] at 8. At this point, the time for negotiation has passed. DOJ is entitled to full enforcement of the Subpoena and should not be required to accept a limited production now, only to inevitably return to the Court as Halpern fails to meet its compliance obligations in the future.

Third, it is well-settled that parties are precluded from redacting responsive documents for information the parties deem nonresponsive, *see* [Dkt. 17] at 3, and Halpern has previously conceded that it cannot make nonresponsive redactions, *see* [Dkt. 11] at 8 ("The cases cited by the Government make it clear that a party wishing to produce redacted documents has the burden of justifying the redactions and that such redactions cannot be justified solely on the basis that the redacted material is unresponsive to the subpoena."). Even setting aside the above issues, Halpern's insistence on making such redactions now, despite acknowledging that it has no authority to make the redactions, borders on frivolity, and this Court should entertain it no further.

## II.     Halpern's Argument Continues to Rely on a Misreading of Precedent.

First, at the outset, Halpern has not demonstrated that DOJ already has the material that it seeks from Halpern, and DOJ does not concede that point. Nor would DOJ's prior receipt of certain documents from third-parties be sufficient to extinguish Halpern's compliance obligations on the basis that DOJ's Subpoena constituted an "unreasonable" abuse of process. *Cf. United States v. Powell*, 379 U.S. 48, 58 (1964) ("The burden of showing an abuse of the court's process is on the [respondent], and it is not met by a mere showing, as was made in this case, that the … records in question have already been once examined.").

---

[1]     For example, Halpern first agreed to join DOJ's request for an order permitting production, only to challenge the validity of DOJ's Subpoena—for the first time in ten months—after the DOJ filed suit. *See* [Dkt. 8] at 1-2.

Second, as previously noted, the *dicta* from *EEOC v. Kronos* on which Halpern principally relies originally derives from the unique regulatory requirements of a tax summons. [Dkt. 17] at 3-4. This language has been viewed—even by the Supreme Court that authored the *Powell* opinion from which the *Kronos* language derives—as a mere gloss on the Government's expansive investigative powers. *United States v. Powell*, 379 U.S. 48, 56 (1964) ("Our reading of the statute is said to render the first clause of § 7605(b) surplusage to a large extent, for, as interpreted, the clause adds little beyond the relevance and materiality requirements of § 7602. That clause does appear to require that the information sought is not already within the Commissioner's possession, but we think its primary purpose was no more than to emphasize the responsibility of agents to exercise prudent judgment in wielding the extensive powers granted to them by the Internal Revenue Code."); *see also United States v. Davis*, 636 F.2d 1028, 1037 (5th Cir. 1981) ("Read in context, we construe the 'already possessed' principle enunciated by *Powell* as a gloss on § 7605(b)'s prohibition of 'unnecessary' summonses, rather than an absolute prohibition against the enforcement of any summons to the extent it requests the production of information already in the possession of the IRS.").

Tellingly, Halpern fails to cite a single case in which a federal court relied on the *Powell* (*Kronos*) language to deny the Government documents, and it ignores relevant Third Circuit precedent holding that the restricting language actually does not preclude the Government from collecting documents already in its possession. *See, e.g.*, *United States v. First Nat'l State Bank of N.J. et al.*, 616 F.2d 668, 673-74 (3d Cir. 1980) (noting that "[t]he clear purpose of *Powell*, as confirmed by the other three showings that must be made by the Government to justify enforcement of a summons (legitimacy of purpose, relevance, compliance with proper procedure), is a desire to prevent abuse of the administrative summons process and harassment of the taxpayer," and enforcing a summons for certain tax records even though the same records were already "within the physical proprietary control of the Government").

Instead, Halpern relies on cases that casually recite the allegedly restricting language from *Powell* without employing it in any meaningful way. *See Kronos*, 694 F.3d 351, 362-63 (3d Cir. 2012) (remanding after a district court impermissibly limited the Government's collection of relevant information under a subpoena); *Univ. of Med. & Dentistry v. Corrigan*, 347 F.3d 57 (3d Cir. 2003) (enforcing a subpoena without any duplicative production analysis); *FDIC v. Wentz*, 55 F.3d 905 (3d Cir. 1995) (same).[2] Even under these cases, which indifferently repeat an Internal Revenue Code requirement not contained in FIRREA, DOJ's Subpoena should be enforced.

---

[2] Although Halpern claims that *Chao v. Community Trust* used the same standard as *Powell* (*Kronos*), [Dkt. 22] at 6, Halpern referenced the portion of the opinion discussing jurisdiction, which is uncontested here. *See* 474 F.3d 75, 87-88 (3d Cir. 2007). Moreover, courts within the Third Circuit have continued to cite *Chao* for the three-part test discussed in DOJ's prior briefing. *See Marathon Petroleum Corp. v. Cook*, 208 F. Supp. 3d 576, 586 (D. Del. 2016) ("An administrative document request survives constitutional challenge if it is 'within the authority of the [requesting] agency,' 'not … too indefinite,' and 'reasonably relevant to the authorized inquiry.' *See Chao v. Cmty. Tr. Co.*, 474, F.3d 75, 79 (3d Cir. 2007).").

<u>Third</u>, it bears repeating that DOJ seeks business records and emails in Halpern's possession that belong to Halpern, and it has sought Halpern's emails and business records only once.  DOJ is permitted to seek records from multiple respondents without running afoul of any subpoena requirement or requiring this Court to micromanage compliance with investigative subpoenas.  *See* [Dkt. 8] at 5-6 (collecting cases); [Dkt. 17] at 3 (same).

<u>Fourth</u>, because Halpern failed to produce documents in standard ESI format (and instead produced hard copies or native files, contrary to the specific instructions contained in the Subpoena), DOJ has no easy or meaningful way of comparing Halpern's production against any other documents that it may have received.  *See United States v. Berkowitz*, 488, F.2d 1235, 1236 (3d Cir. 1973) (noting that it is burdensome to require the Government to engage in an intensive review to evaluate whether it already possesses certain information), *cert. denied*, 421 U.S. 946 (1975).  And even if DOJ could efficiently identify duplicative productions, the result of doing so would not be to reduce any burden on Halpern, which could easily produce the documents in unredacted form, but to allow Halpern to collect privileged information on DOJ's legitimate investigative activities.  Neither *Kronos* nor any other Third Circuit precedent conditions compliance with a federal subpoena on the premature disclosure of core investigative knowledge to a subpoena recipient.

### III.     <u>Halpern's Argument Relating to Burden is Incorrect.</u>

Halpern's entire burden argument rests on the misplaced notion that Halpern must now seek orders from "dozens of different [state] courts" before it can comply with a federal Subpoena that, for reasons discussed in [Dkt. 17] and elsewhere, no state court has the power to adjudicate.  Halpern is making this argument without engaging in any supporting legal analysis, despite DOJ's prior briefing on the Supremacy Clause and this Court's clear admonition that Halpern should "[c]arefully consider the Government's position in formulating its own response letter to the Court."  [Dkt. 20].  Halpern should not be permitted to disregard this Court's instruction to engage DOJ in legal analysis, flippantly repeat an inaccurate position without any legal support, manufacture its own burden out of whole cloth, and then be rewarded for its intransigence by an order modifying or setting aside the Subpoena.  There is no legal basis for Halpern to need to seek state court orders from "38 different states, the District of Columbia, and the Virgin Islands" before complying with the Subpoena in full, and as such, there can be no factual basis for Halpern to claim any undue burden or hardship related to its compliance.

We thank the Court for its consideration in this matter.

Respectfully,

*/s/ David W. Tyler*

David W. Tyler
Trial Attorney
Commercial Litigation Branch

cc:     All Counsel of Record (via CM/ECF)